Bonny G. Rafel, LLC
570 W. Mt. Pleasant Avenue
Suite #106
Livingston, NJ 07039
Phone: (973) 716-0888
BONNY G. RAFEL, ESQ. (6920)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH OLOHAN,<br><br>     Plaintiff,<br><br>                    vs.<br><br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA, PRUDENTIAL<br>WELFARE BENEFITS PLAN,<br><br>     Defendants. | Civil Action No.:<br><br><br>**COMPLAINT** |

Plaintiff Elizabeth Olohan, residing at 15 Ideal Street, Gillette, New Jersey, by way of Complaint against the Defendants, PRUDENTIAL INSURANCE COMPANY OF AMERICA and PRUDENTIAL WELFARE BENEFITS PLAN, alleges as follows:

## INTRODUCTION

1.      This is a claim seeking an award of disability income benefits to Elizabeth Olohan (hereinafter "OLOHAN"), pursuant to the PRUDENTIAL WELFARE BENEFITS PLAN ("hereinafter "the PLAN"), providing long term disability benefits to employees of PRUDENTIAL INSURANCE COMPANY OF AMERICA (hereinafter "PRUDENTIAL").

2.      PRUDENTIAL established the PLAN in order to provide welfare benefits for PLAN participants.

3.      OLOHAN was at all relevant times a vested participant in the PLAN, pursuant to ERISA, 29 U.S.C. § 1002(1) & (7), because she was an employee of PRUDENTIAL at the time of her disability.

4.      It is hereby alleged that PRUDENTIAL and the PLAN were and are fully aware of OLOHAN's long-standing medical condition which entitles OLOHAN to disability benefits but in breach of the PLAN, terminated her disability benefits.

5.      OLOHAN brings this action against Defendants PRUDENTIAL and the PLAN for the following: (1) terminating OLOHAN's disability benefits, in direct contravention of the PLAN; (2) unlawfully and unreasonably denying OLOHAN's benefits without justification and without granting her a full and fair review of her claim for benefits; (3) improperly rejecting and ignoring the opinions of OLOHAN's treating physicians in an attempt to deprive her of long-term disability (hereinafter "LTD") benefits due; (4) improperly introducing extra-contractual requirements beyond the proof of claim set forth in the PLAN; (5) failing to provide a reasonable claims procedure that would yield a decision on the merits of OLOHAN's claim; (6) failing to comply with "higher-than-marketplace quality standards" imposed by ERISA, in their review of OLOHAN'S claim; and (8) improperly conducting a biased review of the claim which led to the denial of benefits due.

6.      By this action, OLOHAN seeks to:  (i) recover past benefits owed to her plus interest through the provisions of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. (hereinafter "ERISA"); (ii) obtain reinstatement of disability benefits under the Policy; (iii) obtain all other ancillary benefits to which OLOHAN would be entitled while receiving disability benefits;

2

including life insurance and a waiver of life insurance premiums, (iv) obtain attorneys' fees pursuant to 29 U.S.C. § 1132(g), ERISA § 502(g); and (v) obtain injunctive relief as set forth in the Prayer for Relief.

## **GENERAL ALLEGATIONS**

### **JURISDICTION**

7.      OLOHAN's claim against Defendants PRUDENTIAL and the PLAN relates to an "employee welfare benefit plan" as defined by ERISA.

8.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) & (f).

9.      Venue is proper under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 because an action may be brought in the district where the PLAN is administered, where the breach took place, or where a defendant resides or may be found.

10.     OLOHAN has exhausted all administrative remedies under the PLAN claims procedure.

### **PARTIES**

11.     At all relevant times, OLOHAN has been a citizen of the State of New Jersey, residing at 15 Ideal Street, Gillette, New Jersey.

12.     At all relevant times OLOHAN was employed by PRUDENTIAL as an Actuarial Manager.

13.     Defendant PRUDENTIAL is a New Jersey corporation and has a principal place of business at 751 Broad Street, Newark, New Jersey.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

14.     The PLAN is a self insured "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1), and may be sued under ERISA as an entity pursuant to 29 U.S.C. § 1132(d)(1).

15.     PRUDENTIAL is the Plan Sponsor as described by ERISA.

16.     At all relevant times, the PLAN established an Administrative Committee, which is responsible for the administration of the PLAN.

17.     The Administrative Committee consists of PRUDENTIAL employees.

18.     The Prudential Welfare Benefits Trust designates the Administrative Committee as the Plan Administrator and fiduciary of the PLAN.

19.     At all relevant times, the Administrative Committee assigned the Integrated Disability Management Unit of PRUDENTIAL as the Claims Administrator and Claims Fiduciary.

20.     PRUDENTIAL, through its Integrated Disability Management Unit, was responsible for the administration of the PLAN.

21.     ERISA, 29 U.S.C. § 1004(a)(1), requires a Plan Administrator to discharge its duties in processing claims solely in the interests of the participants and beneficiaries of the PLAN.

22.     Employees of PRUDENTIAL acted as fiduciary for the PLAN.

23.     Employees of PRUDENTIAL exercised authority and control over the payment of LTD benefits, which are PLAN assets.

24.     At all relevant times, PRUDENTIAL was a fiduciary of the PLAN within the meaning of ERISA, 29 U.S.C. § 1002(21)(A).

4

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

25.     Pursuant to 29 C.F.R. § 2560.503-1, PRUDENTIAL employees have acted as the claims administrator of the Policy pursuant to which OLOHAN is entitled to disability benefits under the PLAN.

26.     Because PRUDENTIAL both funds the PLAN and its employees make decisions on the payment of claims under the PLAN, PRUDENTIAL has financial conflicts of interests with respect to handling, monitoring and eventually denying OLOHAN's claim for disability benefits.

27.     At all relevant times, OLOHAN was entitled to Group Life Insurance benefits coverage and Survivor Life Insurance benefits coverage which was self insured and/or established by Prudential Policy#1690 for she and spouse at no cost to her.

## BACKGROUND

28.     OLOHAN is a 46-year old woman who spent her whole career working for PRUDENTIAL, beginning  in October 1985.

29.     Having received a multitude of raises and promotions over the years, her position for PRUDENTIAL in 2007 was Actuarial Manager. In her capacity as an Actuarial Manager, OLOHAN was responsible for analyzing data and producing actuarial reports.

30.     The Prudential Welfare Benefits PLAN was effective January 15, 1949, amended 1999 and thereafter.

31.     Defendant   PRUDENTIAL   promised   to   pay   qualifying   employees   of PRUDENTIAL disability benefits should they satisfy the burden of proving their disability.

32.     The PLAN contains the following definition of disability applicable to OLOHAN:

    For the first 12 months you will be considered Disabled . . . if:

5

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

You are unable to perform the Material and Substantial Duties of Your Regular Occupation due to your sickness or injury; and
You have a 20% or more loss in your indexed monthly Eligible Earnings due to that sickness or injury.

After you receive benefits for 12 months, you will be considered disabled if, due to the same sickness or injury, you are unable to perform the duties of any Gainful Occupation for which you are reasonably fitted by education, training or experience.

33.    The Maximum Benefit Period set forth in the PLAN is to age 65.

34.    The PLAN provides that the amount of disability income benefits is 50% of the employee's monthly earnings, paid for by PRUDENTIAL, and an additional 15% of the employee's monthly earnings, if elected and paid for by the employee.

35.    OLOHAN elected to purchase the additional 15% long term disability income coverage, which she paid for in after-tax dollars. Therefore her total monthly disability benefit is 65% of her pre disability monthly earnings.

36.    The policy defines "gainful occupation" as an occupation, including self employment, that is or can be expected to provide the Employee with an income equal to at least 65% of his Indexed Monthly Earnings within 12 months of his return to work.

37.    The PLAN includes an offset provision for Social Security disability benefits.

38.    OLOHAN'S salary as a PRUDENTIAL employee was $83,000 per year.

39.    On October 3, 2009, the Social Security Administration determined that OLOHAN was disabled of September 17, 2007 and entitled to monthly disability benefits beginning in March 2008.

40.    The Social Security Administration finding that OLOHAN was totally disabled means that she was unable to engage in any "substantial gainful activity."  Claimants are considered unable to engage in any substantial activity only if their physical or mental

6

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

impairment or impairments are of such severity that they are not only unable to do their previous work, but cannot, considering their age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(1).

41.    The Social Security Administration's determination that OLOHAN was totally disabled was based upon the exact same medical documentation provided to PRUDENTIAL.

42.    PRUDENTIAL is entitled to offset the amount of OLOHAN's LTD benefit payments by the amount of her Social Security payment, $1,978.90 .  The net monthly benefit (after Social Security offset) owed to OLOHAN by PRUDENTIAL is $2,516.95.

## CLAIM FOR DISABILITY BENEFITS

43.    OLOHAN began experiencing intense dental and facial pain in January 2007.

44.     At times in extreme agony, she underwent invasive permanent dental and endodontic treatments for approximately nine months, then consulted specialists in other disciplines and explored numerous treatments.  Her diagnosis was elusive, "bilateral trigeminal neuralgia and atypical odontalgia" but her symptoms remained constant.  As her pain worsened, she became unable to work.

45.    She treated with her dentist and endodontist and had multiple medical procedures, including three root canals, crowns placed and removed, three teeth extracted all in an effort to reduce and control her relentless, distracting pain and discomfort.

46.    OLOHAN's endodontist, Leslie Elfenbein, DMD, described OLOHAN's pain in her treatment notes as "constant," "shooting," "throbbing," and "TMJ type."

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

47.     OLOHAN reluctantly stopped working on September 10, 2007, due to the functional impairment related to her medical condition and its associated severe pain.

48.     OLOHAN had been previously diagnosed with Epstein-Barr virus ("EBV") syndrome and fibromyalgia and had experienced approximately seven episodes of EBV since 1990.

49.     OLOHAN had been unable to continue working during some of the recurrences of the EBV syndrome during those years and PRUDENTIAL had paid her short term disability benefits on each occasion.

50.     In or about September, 2007, OLOHAN submitted a claim for short term disability benefits to PRUDENTIAL and provided Attending Physician statements and medical records to PRUDENTIAL.

51.     In a Prudential Attending Physician's Statement, OLOHAN's internist, Jeffrey Kopelson, MD, noted on September 12, 2007 that OLOHAN also suffered a significant recurrence of chronic fatigue syndrome ("CFS"), secondary to the stress of her ongoing orofacial pain.

52.     PRUDENTIAL approved OLOHAN's short term disability claim in September 2007.

53.     OLOHAN pursued other treatments for her pain, including chiropractic treatment and complementary medicine.

54.     In or about November 2007, OLOHAN treated with a neurologist Sylvain Junger, MD who diagnosed trigeminal neuralgia, a painful condition of the trigeminal nerve, which traverses the face.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

55.     OLOHAN was prescribed medication and treatment for her neurological medically complex condition.

56.     Since the LTD claim begins six months after the payment of short term disability benefits, PRUDENTIAL initiated an intensive review of the OLOHAN claim in the spring of 2008.

57.     As part of that review, PRUDENTIAL employee, Jill Fallon, MD reviewed OLOHAN's claim on February 12, 2008 and March 28, 2008.

58.     Dr. Fallon's specialty is occupational medicine.

59.     In her reviews, Dr. Fallon rejected OLOHAN's diagnoses of trigeminal neuralgia and TMJ syndrome, characterized OLOHAN's medical condition as "cavities," and concluded that her medical records did not support an inability to perform sedentary work due to pain.

60.     PRUDENTIAL rejected their own employee, Dr. Fallons' conclusions and approved OLOHAN's long term disability claim in April 2008, effective March 11, 2008.

61.     On April 21, 2008 PRUDENTIAL's life insurance unit approved OLOHAN's waiver of premium benefit as to her basic life insurance policy, effective March 11, 2008.

62.     In the meantime, PRUDENTIAL consulted with a dentist, John Braun, DDS, MD to obtain his views of OLOHAN's condition, from a review of her medical records.

63.     On May 28, 2008, PRUDENTIAL obtained a report from John Braun, DDS, MD.

64.     In his May 28, 2008 report, Dr. Braun concluded that OLOHAN is "limited in her ability to drive and/or concentrate at work" and that "no real therapeutic progress has been made in the treatment of this claimant in the sense that her pain is still markedly present."

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

65.     In his May 28, 2008 report, Dr. Braun concluded that OLOHAN's "need to lie down to relieve her pain is an impediment to her return to work.  The pain is of such intensity that she has difficulty in focusing on her work and her ADL activities."

66.     In his May 28, 2008 report, Dr. Braun concluded that OLOHAN's "self-reported chronic pain [is] supported by and/or consistent with diagnostic testing."

*67.*     In his May 28, 2008 report, Dr. Braun concluded that OLOHAN is "functionally impaired . . . from 3/11/08 and forward."

68.     In May 2008, OLOHAN was referred to a facial pain specialist at the University of Medicine and Dentistry of New Jersey ("UMDNJ").  Richard A. Pertes, DDS, Clinical Professor and Director of the TMD/Orofacial Pain Center at UMDNJ, diagnosed OLOHAN with atypical odontalgia.  Dr. Pertes increased her dosage of Lyrica and monitored her condition for about two months.

69.     On June 30, 2008, OLOHAN began treating with chiropractor Jean Montecuollo, DC.

70.     On August 11, 2008, OLOHAN began treating with neurologist, Joseph S. Sobelman, M.D.

71.     In his office visit note of August 11, 2008, Dr. Sobelman documented that, despite previous treatment, OLOHAN's pain had increased in severity and intensity and become bilateral.  His impressions, upon examining her, were bilateral trigeminal neuralgia, adverse effect from high-dose Lyrica, TMJ syndrome, EBV syndrome, and CFS/ Fibromyalgia.

72.     OLOHAN suffered a flare-up of her EBV, as evidenced by elevated EBV titers, in or about November and December 2008, which caused flu-like symptoms.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

73.     On November 19, 2008, Dr. Montecuollo completed a Prudential Capacity Questionnaire on which she concluded that OLOHAN did not have full-time work capacity.

74.     PRUDENTIAL hired an investigative firm, K.S.M. Investigations, which conducted surveillance of OLOHAN on November 18 and 20, 2008.   K.S.M. Investigations did not observe OLOHAN outside her residence on November 18 and reported seeing her outside her residence on November 20 for less than one hour.

75.     On December 15, 2008 Dr. Sobelman completed a Prudential Capacity Questionnaire on which he concluded that OLOHAN did not have full-time work capacity.

76.     On December 17, 2008, PRUDENTIAL nurse Patricia Lavinio, RN concluded, in a "SOAP Note":

> There has not been information received since the external file review to suggest the claimant's condition has significantly responded to treatment to result in improved sustained functional status.  [Surveillance] report of 12/1/08 does not provide evidence that the claimant is active.  Based upon the information reviewed the claimant remains with no current capacity . . . .  Prognosis appears guarded.

77.     On January 14, 2009, PRUDENTIAL LTD DCM Supervisor Andy Schopfer stated, in a "SOAP Note,"

> An FCD conducted last month confirmed continuing impairment but had suggested some next steps prior to reviewing again.  It was noted that the any occ is 3/11/08.
>
> A: We agreed to have a clinical file review at this time to confirm whether or not there has been any significant change that would indicate that her pain has either decreased or become more manageable.
>
> P: Clinician to review and document findings.

11

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

78.   PRUDENTIAL claims staff referred OLOHAN's claim back to Dr. Fallon, who had reviewed it in 2008.

79.   Dr. Fallon has no expertise in dentistry, endodontics, oral surgery or neurology.

80.   In her March 11, 2009 report, Dr. Fallon again stated that OLOHAN's "[medical records do not support impairment."

81.   Prudential failed to consider Ms. Olohan's trigeminal neuralgia and atypical odontalgia and how her severe, documented orofacial pain impairs her.

82.   PRUDENTIAL denied OLOHAN's claim as of March 11, 2009.

83.   OLOHAN began treating with one of the foremost experts in orofacial pain in the world, Ira M. Klemons, DDS, PhD on July 6, 2009.

84.   OLOHAN appeal PRUDENTIAL's denial on September 14, 2009.  Her appeal submission included medical records and questionnaires completed by Drs. Klemons and Sobelman.

85.   Dr. Klemons completed a questionnaire indicating that "based on Ms. Olohan's medical history, his clinical examinations, extensive expertise in the specialty of headaches, facial pain and TMJ dysfunctions and relevant medical literature, Dr. Klemons concludes that Ms. Olohan *cannot re-enter the workforce at this time*."

86.   The OLOHAN appeal included medical information concerning OLOHAN's disabling conditions, atypical odontalgia and trigeminal neuralgia, as well as information regarding her co-morbid conditions, TMJ syndrome, CFS, EBV and fibromyalgia.

87.   Dr. Sobelman, OLOHAN's neurologist completed a questionnaire, indicating that the symptoms that he has observed and those that have been reported to him are related to OLOHAN's underlying physical conditions. Based on his clinical assessments of

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

OLOHAN and his ongoing patient-physician relationship, he views her as someone **very** motivated to improve her medical condition.

88.     Dr. Sobelman reported that based on his past treatment of OLOHAN, his clinical findings and evaluations of the patient, the objective findings supporting her diagnoses, the side-effects of her medications, and the documented symptoms of her conditions including her own statement, OLOHAN <u>can not</u> consistently perform the duties of a full time sedentary position at this time.

89.     OLOHAN included her own detailed statement regarding her chronic orofacial pain, and how her condition totally disables her.

90.     OLOHAN submitted her September 14, 2009 appeal to PRUDENTIAL via facsimile on that date and via overnight courier, for delivery on September 15, 2009.

91.     PRUDENTIAL received OLOHAN's appeal on September 15, 2009.

92.     ERISA provides, "the plan administrator shall notify a claimant . . . of the plan's benefit determination on review within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances (such as the need to hold a hearing, if the plan's procedures provide for a hearing) require an extension of time for processing the claim." 29 C.F.R. § 2560.503-1(h)(4)(i)(1)(i) & (h)(3)(i).

93.     PRUDENTIAL's initial 45-day deadline in which to render a benefit determination on review of OLOHAN'S claim was October 29, 2009.

94.     PRUDENTIAL advised by letter dated September 17, 2009 that a decision would be rendered by October 29, 2009.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

95.     PRUDENTIAL did not render a benefit determination on review of OLOHAN's

claim by October 29, 2009.

96.     To date, PRUDENTIAL has not rendered a determination on OLOHAN's appeal.

97.     ERISA provides:

> In the case of the failure of a plan to establish or follow claims
> procedures consistent with the requirements of this section, a
> claimant shall be deemed to have exhausted the administrative
> remedies available under the plan and shall be entitled to pursue
> any available remedies under section 502(a) of the Act on the basis
> that the plan has failed to provide a reasonable claims procedure
> that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(1).

98.     Therefore, pursuant to ERISA, OLOHAN has exhausted the administrative

remedies available under the PLAN and shall be entitled to pursue any available remedies

under Section 502(a) of the Act.

## FIRST CAUSE OF ACTION

99.     OLOHAN incorporates those allegations contained in paragraph 1 through  98 as

though set forth at length herein.

100.    An actual controversy exists between OLOHAN and Defendants arising out of the

events alleged herein above.  Specifically, Defendants have no legal basis for denying

OLOHAN's benefits.

101.    Under the terms of the PLAN, Defendants agreed to provide OLOHAN with

certain disability insurance benefits in accordance with the terms and conditions set forth.

102.    To date, Defendants have failed and refused to pay OLOHAN the benefits to

which she is rightfully entitled from March 15, 2009 to the present.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

103.     OLOHAN has satisfied all conditions precedent under the PLAN and is thus eligible to receive benefits for she has not waived or otherwise relinquished her entitlement to benefits.

104.     Denial of benefits to OLOHAN was contrary to and in breach of the terms of the PLAN.

105.     OLOHAN seeks reimbursement and compensation for any and all benefits she would have received from the inception of coverage including life insurance benefits and waiver of life insurance premium payments, continuing into the future as long as she continues to fulfill the requirements under the PLAN.

106.     As a direct and proximate result of the aforementioned conduct of the Defendants in failing to pay OLOHAN benefits, she has been damaged in an amount equal to the amount of benefits to which she is entitled under the terms of the PLAN plus interest, for a total amount to be determined at the time of trial.

107.     Defendants unreasonably and wrongfully denied OLOHAN's benefits based on unreasonable and unfair claims handling including review of only select medical records, use of a PRUDENTIAL employed doctor who has a financial interest in supporting denials of claims and ignoring the findings of a professional dentist retained specifically to review the OLOHAN claim, who found her unable to return to employment.

108.     PRUDENTIAL has financial conflicts of interest with respect to handling, monitoring and eventually denying OLOHAN's disability benefits.

109.     PRUDENTIAL was influenced by its financial conflict of interest, as both the administrator of the PLAN and the payor of benefits thereunder, when deciding to deny OLOHAN disability benefits.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

110.    The denial of the benefits is a breach of the PLAN in utter disregard of the record and claim file and unsupported by substantial evidence.

111.    The unlawful behavior of Defendants is evidenced by the following, among other unreasonable actions:

a) Failing to authorize benefit payments to OLOHAN at a time when they knew that she was entitled to said benefits under the terms of the Plan, in bad faith and contrary to the PLAN;

b) Unreasonably withholding payments from OLOHAN knowing her claims for benefits were valid;

c) Unreasonably failing to pay OLOHAN benefits without having any evidence, substantial or otherwise, supporting their decision to deny benefits;

d) Completely disregarding OLOHAN's treating physicians' assessment of her medical conditions and how they restrict and limit her from performing her occupation without any basis for doing so;

e) Selectively using its own employed doctor to evaluate the claim on multiple occasions, when PRUDENTIAL knew that the court in prior published decisions had found FALLON MD to be unqualified to render opinions with regard to this type of disability claim;

f) Highlighting certain factors in medical reports in order to cast a favorable light on its position while ignoring the conclusions of OLOHAN's treating physicians regarding the conditions for which they render treatment;

g) Completely disregarding OLOHAN's own assessment of her medical condition and how it restricts and limits her from performing her occupation;

h) Completely disregarding statements of third parties regarding  Olohan's medical condition and how it restricts and limits her activities of daily living;

i) Engaging in a pattern of procedural irregularities to advance their own personal interests in denying benefits, to the detriment of PLAN participants;

j) Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 CFR § 2560.503-1(b), in violation of ERISA;

16

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

k) Consistently acting in their own personal interests instead of those of the PLAN and its participants;

l) Improperly "sanitizing" the administrative record by removing documents before providing a copy to counsel during the administrative appeal, violating OLOHAN's right to have a full and fair review of her claim;

m) Failing to conduct any vocational assessment of OLOHAN prior to denying her benefits;

n) Completely disregarding the Social Security Administration's determination that  OLOHAN is totally disabled and eligible for benefits;

o) Failing to have OLOHAN's medical records reviewed by a medical professional with the requisite training and experience in the fields of medicine involved, in violation of ERISA; and

p) Improperly denying OLOHAN benefits without any information that her condition had improved from the time PRUDENTIAL initially approved her claim.

112.    PRUDENTIAL is a fiduciary within the meaning of 29 U.S.C. § 1001, et seq., specifically 29 U.S.C. § 1002 (21) (a) and is subject to the duties and liabilities set forth in 29 U.S.C. § 1104 and § 1105.

113.    PRUDENTIAL represented to OLOHAN that benefits would be paid if she met the terms and conditions of the PLAN, but failed to fulfill its obligation to discharge its duties solely in the interest of PLAN participants.  PRUDENTIAL breached its fiduciary duty by failing to fairly review and reasonably interpret the reports prepared by OLOHAN's treating and examining physicians and failing to consider material relevant to her medical condition.  Instead, PRUDENTIAL created an artificial reason for denying OLOHAN's disability benefits.  PRUDENTIAL selectively highlighted certain factors in medical reports in order to cast a favorable light on its position while ignoring the conclusions of OLOHAN's treating doctors regarding the condition for which they rendered treatment.

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

114.    PRUDENTIAL breached its fiduciary duty to OLOHAN by placing its financial interests in reducing its expenses and increasing its profitability above OLOHAN's interests under the PLAN to receive disability benefits.

115.    A "higher than marketplace" quality standard, as set forth in Metropolitan Life Ins. Co. v. Glenn, 128 S. Ct. 2343 (2008), applies to evaluating the actions of PRUDENTIAL in this case.

116.    PRUDENTIAL was required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

117.    PRUDENTIAL violated the higher-than-marketplace standards that ERISA imposes on insurers.

118.    Contrary to clear, compelling and substantial medical and functional evidence, PRUDENTIAL wrongfully denied OLOHAN's total disability claim and has wrongfully maintained that denial to this date.

119.    As a direct and proximate result of the conduct alleged herein, OLOHAN has been damaged in an amount equal to the amount of benefits he would have received had Defendants paid her benefits.

120.    OLOHAN has been forced to bring the instant action as a direct result of Defendants' unlawful denial and violations of the PLAN and ERISA.

121.    Because PRUDENTIAL did not render a decision on OLOHAN's appeal, PRUDENTIAL's denial of disability benefits will be evaluated *de novo* by the Court pursuant to Gritzer v. CBS, Inc., 275 F.3d 291 (3d Cir. 2002); Ziesemer v. First Unum Life Ins. Co., 2007 U.S. Dist. LEXIS 52603 (D.N.J. July 19, 2007).

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC

122.    The New Jersey Department of Banking and Insurance has indicated that discretionary clauses are void as a matter of public policy and has issued a Regulation prohibiting the inclusion of any discretionary language in insurance policies, including disability insurance policies.  N.J.A.C. § 11:4-58.

123.    Any language purporting to grant discretion to PRUDENTIAL is void and unenforceable, hence a *de novo* standard applies to this case.

124.    As a direct result of Defendants' acts, actions and activities, OLOHAN has incurred costs and attorney's fees in the prosecution of this action.

125.    OLOHAN is entitled to recover her attorney's fees and costs incurred in prosecution of the instant action, including prejudgment interest, pursuant to 29 U.S.C. § 1132(g), ERISA § 502(g).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff  Elizabeth Olohan prays for judgment as follows:

## FIRST CAUSE OF ACTION

1.    An Order directing Defendants to reinstate OLOHAN under the PLAN.

2.    An Order requiring Defendants to award to OLOHAN total disability benefits due and owing her from March 2009 to the present, with an award of pre-judgment interest without any offset for Social Security benefits.

3.    An Order declaring that OLOHAN is to continue to receive disability benefits in the future for so long that OLOHAN continues to qualify for benefits under the PLAN.

4.    An Order requiring PRUDENTIAL and the PLAN to continue to provide to OLOHAN all available ancillary benefits to which she is entitled as a disabled employee

under the terms of the PLAN and/or to instruct their agents, contractors or other entities, to establish all other benefits due to OLOHAN in her capacity as a disabled employee.

5.     Declaration of Defendant PRUDENTIAL's breach of its fiduciary duties under ERISA.

6.     An injunction barring Defendants from engaging in any further prohibited action under ERISA against OLOHAN including any further breaches of fiduciary duties and/or acts or practices which violate ERISA or the terms of the PLAN.

7.     Payment of reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g), costs incurred in this action; and for such other and further legal and/or equitable relief as the Court deems appropriate.

BY:   **s/Bonny G. Rafel**
          BONNY G. RAFEL, ESQ.  (6920)
          570 West Mount Pleasant Avenue
          Suite 106
          Livingston, New Jersey   07039
          (973) 716-0888
          Attorney for Plaintiff, Elizabeth Olohan

Complaint – Elizabeth Olohan vs. Prudential
Bonny G. Rafel, LLC